SHARON GILBERT TIMM, ESQ.
Attorney I.D. 77778
Penn's Court, Suite 107
350 South Main Street
Doylestown, PA  18901
(215) 489-0179

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MANUEL MATOS** | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | No. |
| v. | : | |
| | : | |
| **MERCK & COMPANY, INC.** | : | JURY TRIAL DEMANDED |
| Defendant. | : | |

## COMPLAINT

I.    JURISDICTION

1.    This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended 1991, 42 U.S.C. § 2000e, et seq.; the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended 1991, and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq., pursuant to 28 U.S.C. § 1331.  Plaintiff's claim under the Pennsylvania Human Relations Act, 43 Pa. Cons.Stat.Ann. § 951 et seq., as amended 1991, is before this court pursuant to supplemental jurisdiction, 28 U.S.C. § 1367.  The amount in controversy, exclusive of interest and costs, exceeds $150,000.

2.    Plaintiff Manuel Matos has exhausted federal administrative remedies. Plaintiff filed his EEOC charge at Docket No. 530-2010-02922, which was dual filed with the Pennsylvania Human Relations Commission (hereinafter "PHRC") at Docket No. 201003465.  More than one year has passed since the filing of his PHRC claim.  On

or about February 14, 2013, the EEOC issued Plaintiff a Right-to-Sue letter. This suit is timely filed within ninety days (90) days receipt of said notice.

II.   PARTIES

3.      Plaintiff Manuel Matos is an adult male, born in San Juan, Puerto Rico, resides at 425 N. Chestnut Street, Lansdale, PA  19446.

4.      Defendant Merck & Company, Inc. is a foreign corporation doing business in West Point, PA  19486-0004. Its headquarters are located at One Merck Drive, Whitehouse Station, NJ  08889-0100. Defendant is an employer within the meaning of the applicable legislation cited herein. At all times relevant to this action, Defendant was Plaintiff's employer.

III.   FACTS

5.      Allegations contained in paragraphs 1 through 4 above are incorporated herein as if set forth in full.

6.      Plaintiff Manuel Matos was hired by Defendant on or around May 24, 1999, as a plumber/pipefitter (an hourly union position).

7.      Matos worked as a plumber/pipefitter until September 20, 2007. As a plumber/pipefitter, Matos made approximately $90,000 plus per year.

8.      Matos's performance evaluations as a plumber/pipefitter were very good.

9.      Matos's former supervisor, Thomas Hannan, recommended Matos highly for any position within Merck.

10.     On September 20, 2007, Matos accepted a management position as a production supervisor.

11.     Matos started his production supervisor position on September 24, 2007.

12.     At the interview for the production supervisor position, Michael McGinn assured Matos his compensation for the production supervisor position would be $71,862 base rate plus the applicable shift premium for Job No. PRO006368, a second shift position.

13.     Matos was told the applicable shift premium he would receive in the position was $900 per month within Department 290.

14.     However, when Matos reported for work on September 24, 2007, Matos learned he had been assigned to Department 135.

15.     Department 135 does not pay $900 shift premium per month. Mr. McGinn was apparently unaware of that fact.

16.     Had Matos known he would not receive the $900 per month shift differential, he would never have accepted the supervisory position for far less pay than he made as a union employee.

17.     Due to severe stress related to his position and the substantially less pay Matos received, Matos was placed on a stress-related leave starting on April 28, 2008. In fact, his predecessors at this position as well as his successors have left this position under same or similar circumstances as Mr. Matos.

18.     Matos was diagnosed with depression and anxiety and was prescribed medication.

19.     Matos had difficulty concentrating, interacting with others, sleeping, speaking (he could not get the words out due to severe anxiety), and thinking.

20.     Matos's doctor told Matos he could not return to Department 135.

21.    Merck refused to return Matos to work in any position other than Department 135.

22.    As a result of Merck's refusal to assign him to any other department, Matos gave two weeks notice the end of September, 2008. Matos was effectively discharged due to Merck's refusal to reassign him.

23.    Matos started a position as a pipefitter in Summit, NJ, on October 13, 2008.

24.   In November, 2009, Merck bought out Schering Plough. Since 2009, Matos has applied for nine different pipefitter/plumber positions within Merck.

25.    Merck Human Resources told Tom Guellich, in Building 78, that Matos would not even be considered for any interview within Merck as a pipefitter/plumber.

26.    The last pipefitter/plumber position that Matos applied for within Merck was on February 2, 2010.

27.    In fact, Merck hired at least five pipefitter/plumbers off the street rather than return Matos to his former position as a pipefitter/plumber.

28.    When the Schering/Merck merger took place, Matos's former colleagues (including his management) at Merck within facility management were overjoyed at the prospect of his return to his former position.

29.    As his former associates within Merck wanted Matos to return to the pipefitter/plumber position, his work as a pipefitter/plumber was excellent, and there were at least eight open positions within Merck since March, 2009, and yet Matos was not offered a position, Matos therefore concludes there is no legitimate business reason as to why he cannot be hired as a plumber/pipefitter within Merck.

4

30.    On or around April 16, 2010, Matos made an internal EEO complaint to Merck. After investigation, Matos was informed by the Office of Ethics, Charles Brown, that Matos could not be rehired due to the way he resigned (Matos did provide two weeks' notice) and his failure to complete a management course which is inapplicable to a union position.

31.    During the EEOC investigation, Merck then conveniently claimed there were "ongoing" performance issues which it admits were never discussed with Mr. Matos. Merck also claimed Mr. Matos had some involvement (as well as other persons) in a "serious safety violation" in March, 2008. Merck claims Mr. Matos "was implicated" in this incident "along with other personnel". Merck does not state what, if any, discipline was accorded to these "other personnel".

32.    Merck now claims this is the legitimate business reason for which Mr. Matos could not return to a position as plumber/pipefitter, a position where he encountered no performance problems. Other persons at Merck have been able to return to their union positions with problem.

33.    The reasons offered by Merck are pretextual in nature inasmuch as his former coworkers and management wanted his return, yet human resources refused based upon insufficient notice and then subsequently claimed Matos had poor performance (which was never discussed with Matos), and a subsequent claim of a "serious" safety violation which also was never discussed with Matos. Further, Merck has proffered at least two different legitimate business reasons on two separate occasions, a total inconsistency in its position.

5

34.     Finally, in Plaintiff's last performance evaluation in his position as Mfg. Facilitator/Supervisor, signed March 6, 2008, Matos received a perfect score of 100% for Actual Performance as an Individual, and also received a merit increase of four percent.

## COUNT I

## PLAINTIFF'S CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED 1991, 42 U.S.C. § 2000e, et seq.

35.     Allegations contained in paragraphs 1 through 34 above are incorporated herein as if set forth in full.

36.     On the basis of his race and/or national origin, Plaintiff was subject to disparate treatment in being denied a full time union pipefitter/plumber position despite his excellent qualifications for the position.  Similarly situated persons outside the class were hired.

37.     Defendant's conduct in unlawfully denying Plaintiff a position was deliberate and violated the Civil Rights Act of 1964, as amended 1991, and has caused Plaintiff to suffer economic harm, emotional distress, anxiety, sleeplessness, humiliation, and stress.

38.     In retaliation after Matos filed his internal EEO complaint and EEOC complaint, Merck then claimed Matos had poor performance and a serious safety violation despite never discussing same with him.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendant for compensatory and punitive damages in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000); plus costs of this action; reimbursement of back pay, front

6

pay, interest, attorney fees, and such other legal and equitable relief as the Court may deem just, proper, and appropriate in the circumstances of this case.

## COUNT II

## PLAINTIFF'S CLAIMS UNDER THE CIVIL RIGHTS ACT OF 1866, AS AMENDED 1991 42 U.S.C. § 1981

39.     Allegations contained in paragraphs 1 through 38 above are incorporated herein as if set forth in full.

40.     Section 1981 guarantees to all persons the right to make and enforce contracts, including performance, modification, and termination as well as enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

41.     On the basis of his race and/or national origin, Plaintiff was intentionally retaliated against after raising claims of impermissible racial and/or national origin discrimination by Merck's falsely accusing him of safety violations and poor performance.

42.     As a direct and proximate result of Defendant's illegal acts, Plaintiff suffered economic loss, loss of sleep, depression, and humiliation, and anxiety.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendant in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000) for compensatory damages, punitive damages, plus costs of suit, attorney fees, interest, and such other legal and equitable relief as the Court may deem, just, proper, and appropriate in the circumstances of this case.

## COUNT III

## PLAINTIFF'S CLAIMS UNDER THE AMERICANS WITH

## DISABILITIES ACT OF 1990, 42 U.S.C. § 12101, et seq.

43.     Allegations contained within paragraphs 1 through 42 above are incorporated herein as if set forth in full.

44.     Plaintiff is a disabled person within the meaning of the ADA as he has a record of physical or mental impairment that substantially limited one or more of his major life activities.

45.     Plaintiff is a disabled person within the meaning of the ADA as he is regarded as having a disability.

46.     Plaintiff is a qualified individual within the meaning of the ADA as he is an individual who can with or without reasonable accommodation can perform the essential functions of the employment position that he held or desired.  He has the requisite skill, experience, education and other job-related requirements for the position he held or desired.

47.     Due to Plaintiff's disability and/or record of impairment, Defendant repeatedly denied him a position as a pipefitter/plumber despite having excellent performance evaluations and his former supervisors wanting to rehire him after the merger with Schering Plough.  After Matos made an internal EEO complaint at Merck, he then was falsely accused of a serious safety violation that was never even discussed with him.

48.     Defendant's unlawful and discriminatory acts have caused Plaintiff to suffer emotional distress, wage loss, monetary loss, personal humiliation, loss of self-esteem, mental anguish, sleeplessness, loss of pride in career, irritability, withdrawal from his social life, anxiety, stress, and embarrassment.

34.     Finally, in Plaintiff's last performance evaluation in his position as Mfg. Facilitator/Supervisor, signed March 6, 2008, Matos received a perfect score of 100% for Actual Performance as an Individual, and also received a merit increase of four percent.

## COUNT I

### PLAINTIFF'S CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED 1991, 42 U.S.C. § 2000e, et seq.

35.     Allegations contained in paragraphs 1 through 34 above are incorporated herein as if set forth in full.

36.     On the basis of his race and/or national origin, Plaintiff was subject to disparate treatment in being denied a full time union pipefitter/plumber position despite his excellent qualifications for the position.  Similarly situated persons outside the class were hired.

37.     Defendant's conduct in unlawfully denying Plaintiff a position was deliberate and violated the Civil Rights Act of 1964, as amended 1991, and has caused Plaintiff to suffer economic harm, emotional distress, anxiety, sleeplessness, humiliation, and stress.

38.     In retaliation after Matos filed his internal EEO complaint and EEOC complaint, Merck then claimed Matos had poor performance and a serious safety violation despite never discussing same with him.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendant for compensatory and punitive damages in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000); plus costs of this action; reimbursement of back pay, front

pay, interest, attorney fees, and such other legal and equitable relief as the Court may deem just, proper, and appropriate in the circumstances of this case.

## COUNT II

### PLAINTIFF'S CLAIMS UNDER THE CIVIL RIGHTS ACT OF 1866, AS AMENDED 1991 42 U.S.C. § 1981

39.     Allegations contained in paragraphs 1 through 38 above are incorporated herein as if set forth in full.

40.     Section 1981 guarantees to all persons the right to make and enforce contracts, including performance, modification, and termination as well as enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

41.     On the basis of his race and/or national origin, Plaintiff was intentionally retaliated against after raising claims of impermissible racial and/or national origin discrimination by Merck's falsely accusing him of safety violations and poor performance.

42.     As a direct and proximate result of Defendant's illegal acts, Plaintiff suffered economic loss, loss of sleep, depression, and humiliation, and anxiety.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendant in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000) for compensatory damages, punitive damages, plus costs of suit, attorney fees, interest, and such other legal and equitable relief as the Court may deem, just, proper, and appropriate in the circumstances of this case.

## COUNT III

### PLAINTIFF'S CLAIMS UNDER THE AMERICANS WITH

## DISABILITIES ACT OF 1990, 42 U.S.C. § 12101, et seq.

43.     Allegations contained within paragraphs 1 through 42 above are incorporated herein as if set forth in full.

44.     Plaintiff is a disabled person within the meaning of the ADA as he has a record of physical or mental impairment that substantially limited one or more of his major life activities.

45.     Plaintiff is a disabled person within the meaning of the ADA as he is regarded as having a disability.

46.     Plaintiff is a qualified individual within the meaning of the ADA as he is an individual who can with or without reasonable accommodation can perform the essential functions of the employment position that he held or desired.  He has the requisite skill, experience, education and other job-related requirements for the position he held or desired.

47.     Due to Plaintiff's disability and/or record of impairment, Defendant repeatedly denied him a position as a pipefitter/plumber despite having excellent performance evaluations and his former supervisors wanting to rehire him after the merger with Schering Plough.  After Matos made an internal EEO complaint at Merck, he then was falsely accused of a serious safety violation that was never even discussed with him.

48.     Defendant's unlawful and discriminatory acts have caused Plaintiff to suffer  emotional distress, wage loss, monetary loss, personal humiliation, loss of self-esteem, mental anguish, sleeplessness, loss of pride in career, irritability, withdrawal from his social life, anxiety, stress, and embarrassment.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendant CBSD in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000) for back pay, front pay, compensatory and punitive damages, interest, costs, attorney's fees, and such other legal and injunctive relief as this Court may deem just, proper, and appropriate under the circumstances of this case.

<strong><u>COUNT IV</u></strong>

<strong>PLAINTIFF'S CLAIMS UNDER THE PENNSYLVANIA<br>HUMAN RELATIONS ACT<br>43 P.S. § 951 et seq., as amended 1991</strong>

49.     Allegations contained in paragraphs 1 through 48 above are incorporated herein as if set forth in full.

50.     Pennsylvania's Human Relations Act, 43 P.S. § 951 et seq., prohibits race, disability, and national origin discrimination in the form of disparate treatment and retaliation.

51.     The egregious nature of Defendant's conduct entitles Plaintiff to additional damages under Pennsylvania law.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000) for back pay, compensatory damages, plus costs of this action, interest, attorney fees, and such other legal and equitable relief as this Court may deem just, proper, and appropriate under the circumstances of this case.

Date:   May 14, 2013                    *s/Sharon Gilbert Timm*
                                        Sharon Gilbert Timm, Esquire
                                        Attorney for Plaintiff

9